IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROBIN M. VICKERS                                                                                    PLAINTIFF

        v.                              Civil No. 3:12-cv-03053-JRM

CAROLYN W. COLVIN, Commissioner of
Social Security Administration[1]                                                              DEFENDANT

## MEMORANDUM OPINION

**I.      Factual and Procedural Background**

      Plaintiff, Robin M. Vickers, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

      Plaintiff protectively filed her applications on March 20, 2009, alleging an amended disability onset date of July 15, 2009,[2] due to amputation of her left leg below the knee, back pain, neck pain, hip pain, bipolar disorder, hearing loss, complex regional pain syndrome, and attention-deficit/hyperactivity disorder ("ADHD"). Tr. 10, 12-13, 170, 185, 244. On the alleged onset date, Plaintiff was thirty-six years old with a GED and an associate's degree in respiratory therapy. Tr. 20, 43, 174, 189, 325.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2] Plaintiff alleged an initial onset date of February 19, 2009. Tr. 10. However, she amended her alleged onset date to July 15, 2009, at the administrative hearing. Tr. 10, 45.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 64-70, 72-75. At Plaintiff's request, an administrative hearing was held on July 21, 2010. Tr. 40-59. Plaintiff was present at this hearing and represented by counsel. On October 13, 2010, the ALJ rendered an unfavorable decision, finding Plaintiff not disabled under the Act. Tr. 7-21. Subsequently, the Appeals Council denied Plaintiff's Request for Review on February 18, 2012, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff now seeks judicial review of that decision.

## II.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months.

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III.   ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since July 15, 2009, her amended alleged onset date. Tr. 12. At step two, the ALJ found Plaintiff suffers from the following severe impairments: amputation of left leg below the knee and mood disorder. Tr. 12-13. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 13-15.

At step four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), in which she could sit for six hours and stand/walk for two hours during an eight-hour workday, occasionally lift/carry items weighing ten pounds and frequently lift/carry items weighing less than ten pounds, and occasionally climb, balance, crawl,

kneel, stoop, and crouch, but must avoid hazards, including unprotected heights and moving machinery. Tr. 15-20. Mentally, the ALJ found Plaintiff could perform work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and little judgment required, and supervisory contact is simple, direct, and concrete. Tr. 15-20.

The ALJ found Plaintiff had no past relevant work. Tr. 20. At step five, after consulting a vocational expert, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[3] Accordingly, the ALJ determined Plaintiff was not under a disability from July 15, 2009, the amended alleged onset date, through October 13, 2010, the date of the administrative decision. Tr. 21.

## IV.  Discussion

Plaintiff contends the ALJ erred by: (A) dismissing the opinion of her treating physician and nurse; and (B) failing to properly consider her physical and mental impairments. *See* Pl.'s Br. 7-14. The Commissioner responds that substantial evidence supports the ALJ's determination. *See* Def.'s Br. 4-14. For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ

---

[3] The ALJ determined Plaintiff could perform the requirements of representative sedentary, unskilled occupations such as machine tender, of which there are 250 jobs in Arkansas and 18,100 jobs nationally, assembler, of which there are 400 jobs in Arkansas and 31,043 jobs nationally, and inspector, of which there are 53 jobs in Arkansas and 4,500 jobs nationally. Tr. 20-21, 251.

determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

The ALJ determined Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), in which she could sit for six hours and walk/stand for two hours during an eight-hour workday, occasionally lift/carry items weighing ten pounds and frequently lift/carry items weighing less than ten pounds, and occasionally climb, balance, crawl, kneel, stoop, and crouch, but must avoid hazards, including unprotected heights and moving machinery. Tr. 15. The ALJ further limited Plaintiff to unskilled work. Tr. 15.

Plaintiff has a history of left leg stump pain. In 1995, Plaintiff underwent a below-the-knee amputation of her left leg due to a gunshot wound. Tr. 268. Subsequently, she was fitted for a prosthesis and worked as a respiratory therapist for several years. Tr. 462-534. In June 2009, Plaintiff presented to Westside Family Medical Clinic with complaints of severe pain in her left leg stump. Tr. 338. Timothy Killough, M.D., diagnosed Plaintiff with a neuroma in the stump on her left leg and treated her with Demerol and Darvocet. Tr. 337, 340. On July 23, 2009, Dr. Killough completed an Attending Physician's Statement, in which he opined that Plaintiff could only wear her prosthetic leg for up to two hours with pain medication. Tr. 340. He also noted that Plaintiff would need to see a surgeon. Tr. 340.

Plaintiff was referred to Hicham S. Merheb, M.D., for evaluation and treatment. On September 15, 2009, Dr. Merheb diagnosed Plaintiff with complex regional pain syndrome of the left lower extremity. Tr. 373. Dr. Merheb treated Plaintiff with epidural steroid injections and Hydrocodone. Tr. 372, 374. A triple phase bone scan, dated November 23, 2009, revealed an abnormal residual left fibula. Tr. 398.

Beginning in November 2009, Plaintiff received treatment at Branson Neurology and Pain Center. Tr. 456. Plaintiff was diagnosed with neuropathy secondary to left below-the-knee amputation and treated with pain medications including Hydrocodone and Percocet as well as Gabapentin and Neurontin. Tr. 459. Plaintiff was advised to follow up with an orthopedic neurosurgeon for evaluation of concerns of neuromas in and around the stump and possible surgical revision. Tr. 450.

On December 7, 2009, Plaintiff presented to Arkansas Orthopedics and Sports Medicine for treatment. Tr. 445. Dr. Sedani assessed Plaintiff with a neuroma and recommended rest, Neurontin, oral anti-inflammatories, and possible prosthesis revision. Tr. 445.

On February 19, 2010, Plaintiff was referred to Richard Nix, M.D., for evaluation and treatment of her neuroma. Tr. 602. Dr. Nix opined that Plaintiff had neuroma-like pain and agreed to perform a surgical excision. Tr. 602. Thereafter, on July 13, 2010, Plaintiff underwent surgical excision of the neuroma as well as a remaining shotgun pellet. Tr. 614. The ALJ rendered his opinion on October 13, 2010.

After reviewing the evidence of record, the undersigned finds that substantial evidence does not support the ALJ's RFC assessment. The ALJ did not afford substantial weight to Dr. Killough's Attending Physician's Statement, noting that his statement was made prior to neuroma removal and

was inconsistent with the medical evidence as a whole. Tr. 19.

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

While the ALJ is correct that Dr. Killough's Attending Physician's Statement was completed before Plaintiff's neuroma excision, she did not undergo surgical intervention until July 2010. As such, Plaintiff's physical condition *with* her neuroma encompasses much of the relevant time period and is therefore material to this case. Moreover, Dr. Killough was the only treating physician to render an opinion concerning Plaintiff's physical limitations. The ALJ afforded substantial weight to the opinions of the agency physicians; however, they did not have the benefit of Plaintiff's complete medical record at the time they completed their RFC assessments, nor did they physically examine Plaintiff. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). For this reason, the present case is reversed and remanded for further consideration of Plaintiff's physical impairments and their functional impact on Plaintiff's ability to work. On remand, the ALJ should

reconsider the issue of Plaintiff's RFC, as well as the possibility of a closed period of disability.

**V.      Conclusion**

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 10th day of July 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE